**BOIES SCHILLER FLEXNER LLP**
David Boies (*pro hac vice* forthcoming)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* forthcoming)
jyanchunis@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

*Attorneys for the Luna Plaintiffs; additional counsel listed in signature blocks below*

**COOLEY LLP**
Whitty Somvichian (CA Bar No. 194463)
Aarti Reddy (CA Bar No. 274889)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222
wsomvichian@cooley.com
areddy@cooley.com

*Attorneys for Defendant; additional counsel listed in signature blocks below*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

GILBERT LUNA, et al.,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 4:26-cv-03246-YGR

**JOINT STATUS SUBMISSION RESPONDING TO THE COURT'S ORDER RE CONSOLIDATION OF RELATED MATTERS (DKT. NO. 27)**

Pursuant to the Court's June 23, 2026 order (Dkt. No. 27) (the "Consolidation Order"), Plaintiffs and Google (together the "parties") submit this joint status statement for the upcoming case management conference scheduled for October 5, 2026 at 1:00 P.M.

The Court directed the parties to address the following issues:

(a) The process to ensure that all appearing counsel and all pro se parties are added to the service list for the Lead Case, *Gilbert Luna v. Google LLC*, No. 4:26-cv-03246-YGR;

(b) All anticipated motions involving similar legal, factual, or discovery issues so that there can be coordination, including with respect to mutually agreeable same hearing date and consolidation briefing/joinders to avoid redundancy;

(c) As to cross-motions for summary judgment, the parties must comply with this Court's standing order and shall meet and confer in advance to identify core issues to be addressed in a coordinated manner. In general, only one motion is allowed per side. Additionally, the Court allows only four briefs for any cross-motion (opening, opposition/cross-motion opening, reply/cross-motion opposition, and reply on cross motion); and

(d) Joint proposal for fact sheets.

The parties address these four issues below, and the parties also include certain additional issues below for the Court's consideration.

**(a) Service List**

All of the plaintiffs in these consolidated cases are represented by Boies Schiller Flexner LLP and Morgan & Morgan ("BSF/MM"), and Google is represented in all of these consolidated cases by Cooley LLP. There are no *pro se* litigants. Counsel for the parties have created service lists that can be used for these cases, which will be provided to the Court to make it easy to ensure service on all counsel for the parties. All counsel who seek to receive service of filings will file NOAs and PHVs in the Lead Case, *Gilbert Luna v. Google LLC*, No. 4:26-cv-03246-YGR.

**(b) Anticipated Motions Involving Similar Legal, Factual, or Discovery Issues**

The parties will work together to ensure that any motions involving similar legal, factual, or discovery issues are handled in a coordinated way, including with respect to mutually agreeable same hearing date and consolidated briefing to avoid redundancy.

Plaintiffs' Position:

There are no currently anticipated motions for Plaintiffs.[1] Plaintiffs are focused on moving these cases forward efficiently, based on the discovery record and rulings from *Brown*. The Court already has the pretrial briefing and rulings from *Brown*, and Plaintiffs will be prepared to proceed to trial as soon as possible based on the discovery record and rulings from *Brown*.

In terms of any additional discovery, Plaintiffs hope that the parties can navigate any issues without the need for motion practice or any substantial burden on Magistrate Judge van Keulen. Google already agreed to Plaintiffs' use of the discovery record from *Brown* for these cases.

The parties have already discussed a bellwether process for these cases, which is addressed below. Plaintiffs continue to believe that would be an efficient way to manage these cases, including in terms of any additional discovery.

Google's Position:

Google does not presently anticipate filing any motions, other than motions for summary judgment and potential motions regarding short form complaints ("SFCs") discussed below. *See* Sections (c), (d), *infra*. Google disputes Plaintiffs' characterization in footnote 1. *See also* Section (g), *infra*. Google continues to meet and confer with Plaintiffs regarding various preservation issues, including Plaintiffs' failure to preserve relevant browser ESI. These issues are not yet ripe for the Court's consideration.

**(c) Summary Judgment**

The parties understand and will comply with this Court's standing order with respect to any summary judgment motions, and they shall meet and confer in advance to identify core issues to be addressed in a coordinated manner.

Plaintiffs' Position:

[1] This position depends, however, on the recent revelation that Google failed to preserve relevant evidence in *Brown* and the impact that has on Plaintiffs' claims in this case. If it is determined that the failure to preserve impacts available evidence for a period of time, Plaintiffs may seek all necessary relief, including sanctions.

The parties agree that Google will not seek to re-litigate any of the summary judgment issues that were already briefed and decided in *Brown*. To the extent Google seeks any summary judgment, Plaintiffs would expect that to focus on any issues that might arise that are specific to individual plaintiffs and to be of limited length. Plaintiffs will of course be willing to meet and confer with Google to try to streamline any briefing and minimize the burden on the Court.

Google's Position:

Google will not "re-litigate" issues this Court has already decided, but at the appropriate time, will raise issues involving the bellwether Plaintiffs, including related to implied consent and damages. Google will comply with the Court's meet and confer requirements in connection with any motion.

**(d) Fact Sheets**

Plaintiffs' Position:

*Plaintiff fact sheet*: To avoid burdening the Court unnecessarily, and to move things forward, Plaintiffs used the fact sheet that Google previously proposed (attached as **Exhibit A**) as of the date the Court ordered Plaintiffs to complete their short form complaints. Although Plaintiffs proposed a competing fact sheet in state court, Plaintiffs withdrew their prior objections and collected the substantive facts that Google sought through its fact sheet proposal. To reduce the burden on Plaintiffs and to ensure information was collected efficiently and on a timely basis, Plaintiffs' counsel contacted their clients and requested that they both fill out the short-form complaints and to provide the information requested with this fact sheet. As of the September 8, 2026 deadline to file short-form complaints, 392 Plaintiffs' short-form complaints were filed with this Court.

After outreach to the Plaintiffs began, Google revised the fact sheet it had previously proposed to request additional information it had previously not raised with Plaintiffs. Google then revised its proposed fact sheet again after the short form complaints had already been filed. These repeated changes in position would have imposed further burden on the collection of fact sheets and resulted in confusion and frustration for those Plaintiffs who had already completed the process, including the plaintiff's marital status; detailed educational history; browser extension, app, and other "tools used to enhance the privacy of [Plaintiff's] online activity"; specific websites visited;

and extensive details of the injuries alleged. While these topics might be relevant to Plaintiffs who are already selected for a bellwether discovery pool, they are not properly raised at the fact sheet stage, as demonstrated by Google's first proposal (*compare* **Exhibit A** *with* **Exhibit B**), which was sufficient then to identify potential bellwether plaintiffs that would later be selected to participate in the bellwether discovery pool.

Google's claim that it needed to "agree" to the form of the fact sheet before Plaintiffs filled them out lacks merit for two reasons. First, Plaintiffs used the same fact sheet that Google itself previously proposed. And given that Plaintiffs withdrew all of their previous objections to that fact sheet, thereby conceding to every Google request, there was nothing to meet and confer about. That Google would now complain about the form of the fact sheet that Google itself proposed strains credulity. Second, Google's one-sided rendition of the parties' negotiations over the fact sheet, which has spanned more than a year without resolution, confirms that Google's request for additional meet and confers would not have resulted in an agreed upon fact sheet that Plaintiffs could use anytime soon. Google's insistence on additional meet and confers and the need for even more information from Plaintiffs than Google previously demanded is simply another attempt by Google to cause unnecessary burden and delay. The completion of hundreds of fact sheets on short notice required considerable effort, which Google knows too well. Google hopes that forcing Plaintiffs into completing another round of fact sheets will cause some Plaintiffs to grow frustrated and fail to respond in a timely manner (after which Google will undoubtedly seek the dismissal of their claims). Plaintiffs respectfully submit that the fact sheet Google initially proposed, while burdensome, was sufficient then and is sufficient now. Google should be made to stick to its initial proposal. To allow Google to continue to demand more and change its position multiple times imposes unreasonable further burdens on the individual Plaintiffs.

*Google fact sheet*: To further streamline this process, Plaintiffs are dropping their request for Google to provide any information by way of a fact sheet. As part of their meet and confer efforts, Plaintiffs had proposed that Google also provide information in response to a fact sheet. Google has taken the position that it is unable to provide information regarding Plaintiffs' Incognito browsing activities because Google is not technically able to do so and because Google cannot do

so pursuant to the Stored Communications Act. Accordingly, Plaintiffs will be proceeding on their testimony of their best recollection regarding their use of Incognito, along with evidence produced in *Brown* demonstrating that Google intercepted private browsing communications and collected detailed information from Incognito browsing activities.

Google's Position:

***Plaintiff fact sheet*:** Plaintiffs ignored the Court's requirement for the parties to submit a "joint proposal" on a fact sheet to be sent to individual Plaintiffs and took unilateral action. They have not acted in good faith in coordinating with Google. *Brown* Dkt. No. 1182 at 3. To be clear, the parties agree that all plaintiffs should be issued a fact sheet. But, the parties never agreed on the substance or process for collecting individual Plaintiffs' information.

The parties began meeting and conferring on fact sheets in September 2025. The initial proposal intended to gather fact sheets from the over 385,000 plaintiffs in state court represented by six different law firms. On November 12, 2025, Google prepared and sent the document Plaintiffs attach as **Exhibit A** in connection with those early-stage discussions in the state court actions. On its face, Exhibit A reflects that the parties disagreed about the content of the fact sheets. *See* Exhibit A (containing separate "agreed" and "disputed" sections). Instead, without any prior notice, Plaintiffs disclosed for the first time in connection with this statement that they silently "withdrew their prior objections" to Google's original state court proposal and unilaterally sent this document to their clients in the federal action—***without notifying Google or the Court***. The parties never agreed to this and Plaintiffs' unilateral action was improper for multiple reasons.

***First***, Plaintiffs do not (and could not) claim the parties agreed on Google's November 12, 2025 proposal or the content of the Plaintiff fact sheets. Google withdrew its November 12, 2025 proposal (Exhibit A) on January 28, 2026, after Plaintiffs notified Google they would amend their complaints to add new claims. (2026-01-28 A. Reddy Email (informing Plaintiffs that "Google believes continued negotiations on the Plaintiff fact sheets is premature at this time").) And, the parties subsequently exchanged several drafts of fact sheets that post-date the version Plaintiffs unilaterally sent to their clients. Most tellingly, on February 12, 2026, Plaintiffs submitted their own competing fact sheet proposal to the state court, and "request[ed] that the Court adopt their

proposal." (2026-02-12, JCCP Case No. 5377, Joint Case Management Statement at 14). Simply stated, the fact that Plaintiffs asked the state court to adopt a ***different fact sheet*** makes clear that the earlier draft Google offered on November 12, 2025 and withdrew on January 28, 2026 was never "agreed."

***Second***, Plaintiffs' unilateral actions also violate the Court's June 22, 2026 Order in two respects. The Court specifically directed the parties to meet and confer on a "joint proposal" for fact sheets in the federal actions, and that same order likewise reflects the Court's expectation that it would also have an opportunity to review and approve the same. (*See Brown* Dkt. No. 1182 at 3 (ordering the parties to "file a joint case management statement which shall address… [a] Joint proposal for fact sheets"). Despite Google's efforts to negotiate, Plaintiffs skipped both of these steps and transmitted both fact sheets without Google's or the Court's input. This is particularly improper because Plaintiffs did not disclose they had already sent proposed fact sheets to their clients while the parties were actively conferring on fact sheets in the *Luna* case. In response to the Court's June 22, 2026 Order, the parties held a meet and confer to discuss Plaintiff fact sheets on June 30. Google proposed a revised draft for the federal action which it sent to Plaintiffs on July 2, 2026. Plaintiffs agreed to "review so we can discuss next steps." Google followed up to request Plaintiffs' position on July 5, 2026. Plaintiffs' counsel never substantively responded or disclosed they had already sent fact sheets to their clients. This was contrary to Plaintiffs' duty of candor to both Google and the Court and should not relieve them of the obligation to confer now.

***Finally***, Google's current fact sheet proposal attached as **Exhibit B** adds a small number of topics that are critical to bellwether selection but absent from Plaintiffs' SFCs, including basic demographic/educational information, facts regarding Plaintiffs' use of Incognito, and clarification on the damages they claim to have experienced—the last of which this Court has already underscored is crucial to resolving the claims.

Accordingly, Google proposes that the parties renew their meet-and-confer efforts to determine if agreement can be reached on fact sheets and a process for distributing and collecting responses. If the parties are at an impasse, Google proposes that the parties submit any narrow areas of disagreement to Magistrate Judge van Keulen for determination.

*Google fact sheet*: The parties agree that no fact sheet needs to be issued to Google.

**(e) Proposed Bellwether Process & Bellwether Trial**

Plaintiffs' Position:

These cases have been pending for 2.5 years. The parties have conducted multiple meet and confers to develop a bellwether process, including multiple proposals from Plaintiffs yet none from Google. Now that these cases are before this Court, the parties have a proven model: Plaintiffs propose a bellwether selection process that tracks what this Court ordered in *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, Case No. 4:22-md-03047-YGR ("*In re Social Media Litig.*"), Dkt. 604 (Case Management Order No. 10 Including Pretrial Order). There, for the personal injury cases, the Court ordered (1) the identification of a proposed bellwether discovery pool 14 days after serving fact sheets, with (2) plaintiffs and defendants each selecting six cases and explaining "why their slate of cases is representative of the cases in the MDL and selection of such cases is productive to facilitating resolution of these proceedings" and (3) a hearing on bellwether discovery pools four days later, where the Court would have discretion to "add up to three additional cases" to "ensure adequate representativeness" for the bellwether discovery pool. The Court then outlined a "Step 2" to form the bellwether trial pool.

Based on the Court's prior order and timeline, Plaintiffs propose the following:

- On October 12, 2026 (one week after the Court's October 5, 2026 Case Management Conference), Plaintiffs serve Google with completed fact sheets consistent with Ex. A.
- Google has fifty (50) days from the receipt of Plaintiffs' fact sheets to serve a notice of deficiency and, following receipt of the notice of deficiency, Plaintiffs shall have fifty (50) days to jointly meet and confer with Google regarding the perceived deficiencies and possible resolution by amendment to the PFS or the submission of additional information.
- Thereafter, Plaintiffs and Google shall each submit a brief to the Court, with Plaintiffs and Google each identifying six bellwether discovery cases and explaining why their slate of cases is representative of the cases in this coordinated proceeding and selection of such cases is productive to facilitating resolution of these proceedings.

- Thereafter, at the Court's convenience, the Court holds a hearing to finalize the selection of the bellwether discovery cases, with the parties advised that the Court may, in its discretion and after hearing argument on the parties' proposals, elect to add up to three additional cases to each bellwether discovery pool to ensure adequate representativeness.
- Immediately after the Court finalizes the selection of the bellwether discovery cases, the parties exchange written discovery requests and work together to efficiently conduct any appropriate discovery, with the supervision of Magistrate Judge van Keulen.
- First bellwether trial to be scheduled at the earliest possible date subject to the Court's availability.

Plaintiffs do not oppose a deficiency process, and have amended their proposal to account for such a process. However, there is no need to further meet and confer, as Google suggests, to develop a bellwether process: indeed, in the *In re Social Media Litig.*, the Court ordered both a deficiency process (Dkt. 596; January 29, 2024) and bellwether process (Dkt. 604; February 8, 2024) without delay. Plaintiffs' proposal follows this Court's proven model.

Google's Position:

Plaintiffs' proposed bellwether selection process and timeline is premature. Plaintiffs disclosed their proposal (based on the process adopted in the *In re Social Media Addiction* cases but omitting any step for addressing deficient fact sheets) for the first time in connection with exchanging a CMC Statement draft and only today modified that proposal as reflected above. Plaintiffs' material, last minute-changes to their bellwether proposal only underscores the need for a meaningful meet-and-confer process before presenting a proposal to the Court.

Plaintiffs cannot bypass the conferral process needed to determine an appropriate bellwether selection for these cases by simply repurposing the *In re Social Media Addiction* framework without regard to whether it fits the claims and issue here. For example, in *In re Social Media Addiction*, the parties proposed and the Court resolved specific criteria for determining whether a plaintiff would be eligible for bellwether selection. *See* CMO 11, Dkt. No. 646 at 4. The parties have had no such discussions here, which is to be expected since the Court's prior orders did not even contemplate resolving a bellwether selection process at the upcoming CMC.

Google therefore proposes the following: (1) Google will agree to Plaintiffs' proposal that Google have fifty (50) days to serve notices of plaintiff fact sheet deficiencies and fifty (50) days to resolve those deficiencies or else raise any remaining issues with Magistrate Judge van Keulen for determination; and (2) by the time plaintiff fact sheet disputes are resolved, the parties will have completed their meet and confer on a bellwether selection process—including case pool size and selection methodology—and submit a joint proposed plan, or competing proposals if the parties cannot agree, for the Court's consideration.

**(f) Treatment Of Plaintiffs Who Have Not Filed Short-Form Complaints**

Plaintiffs' Position:

Of the 499 plaintiffs removed by Google to this Court and not remanded to state court, 392 filed short-form complaints by the September 8, 2026 deadline set by the Court. The others for various reasons did not meet that deadline. The fact that some of these plaintiffs elected to not proceed with a short-form complaint is not surprising. It has been over 2.5 years since these cases were filed, and the responsiveness and interest by some plaintiffs can drop off over time. But the short form complaint process here differs from other short form complaint processes employed in mass torts because each and every Plaintiff filed an initial complaint in state court. Similar to the process employed in the *In re Social Media Cases*, Dkt. 3185, Plaintiffs respectfully propose the following procedure for addressing these remaining cases:

- For Plaintiffs who filled out a short-form complaint after the September 8, 2026 deadline, but before the October 5, 2026 case management conference, those Plaintiffs be permitted to file those short-form complaints by October 7, 2026 (*i.e.*, two court days following the October 5, 2026 case management conference).
- On October 12, 2026, Plaintiffs will provide to Google a list of the Plaintiffs who have not filed a short-form complaint. The parties shall meet and confer in good faith regarding any disputed entries and use reasonable efforts to narrow or resolve disputes before any proposed request for an Order to Show Cause ("OSC") is submitted.
- On October 26, 2026, for any remaining Plaintiff that Google and Plaintiffs' counsel agree remains non-compliant (*i.e.*, has not filed a short-form complaint), the parties shall file a

joint proposed OSC, including a request that the Court set, not less than 45 days after the filing date, an OSC hearing as to why that Plaintiff's claims should not be dismissed for failure to timely complete and file a short-form complaint. The joint proposed OSC shall attach a list of all allegedly non-compliant Plaintiffs.

- The joint proposed OSC shall provide that any listed Plaintiff who does not serve a short-form complaint by the hearing date shall be subject to dismissal without prejudice for failure to comply with the Court's prior orders and the OSC, subject to the Court's determination at or after the hearing.
- Following the Court's hearing, the parties shall submit a proposed order dismissing without prejudice the claims of all Plaintiffs that the Court determines remain subject to dismissal pursuant to the OSC. The proposed dismissal shall attach a master non-submittal list identifying the Plaintiffs to be dismissed and their corresponding case information.

Google's proposal to dismiss the Plaintiffs who have not filed short form complaints is severe and indicative of its broader strategy of using technicalities to dismiss individual Plaintiffs' claims, even where there is no prejudice to Google. In the event the Court does not wish to employ the deficiency process outlined above, and would dismiss the Plaintiffs who have not filed short form complaints as of September 8, 2026, Plaintiffs would request that the Court instead remand those cases to state court.

Plaintiffs are in receipt of Google's September 16, 2026 letter, and have already begun addressing these matters, such as corrected names. The other matters (e.g., the 36 duplicate short form complaints) were simply corrections to scrivener's errors and the corrected amended short form complaint was filed in accordance with the Court's September 8, 2026 deadline. In short, the ministerial errors Google points to below have been resolved. Plaintiffs are available to meet and confer with Google prior to the October 5 Case Management Conference to narrow and resolve any remaining perceived issues with the filed short form complaints.

<u>Google's Position</u>:

Plaintiffs' convoluted proposal gives themselves another ***three months*** to file additional SFCs. It is prejudicial to Google and would undermine efficient resolution of the claims. Plaintiffs

do not impose any firm deadline by which all SFCs must be filed. Instead, Plaintiffs agree only to file an OSC to seek dismissal ***without*** prejudice by October 26—seven weeks after the deadline to file SFCs—and then, with no supporting justification, claim any cases for which a SFC has not been filed should be remanded to state court. This lack of certainty will upend the orderly administration of these proceedings and is wholly unjustified--Plaintiffs should not be given indefinite time to make only a bare minimum effort toward participating in this lawsuit.

Google proposes the following: (1) Plaintiffs who have not filed SFCs should have their claims dismissed without prejudice now, and (2) any currently pending SFCs may not be amended without good cause. The Court gave Plaintiffs three months to file SFCs, and this process cannot continue indefinitely. That is particularly true because many of the SFCs Plaintiffs have filed remain deficient. For instance, 36 Plaintiffs filed duplicate SFCs with materially different substantive answers on matters (*e.g.*, differing dates of Incognito use and devices used). To the extent Plaintiffs now claim these were "scrivener errors," Google still needs to understand which SFC controls and remains willing to meet and confer on those SFCs. Google promptly notified Plaintiffs of several deficiencies and has received no response.

**(g) Google's Disclosure Regarding Its Failure to Preserve Certain Evidence**

Plaintiffs' Position:

On August 21, 2026, Google notified the Court that a "subset of data from six mapping tables Google preserved pursuant to this Court's preservation orders was inadvertently deleted." *Brown* Dkt. 1183. According to Google, as a result of that deletion, "data in these mapping tables for the nine-month period between October 2022 and July 2023 is no longer available." *Id.*

On August 26, 2026, counsel met and conferred, and Plaintiffs' counsel requested additional information from Google to assess what had occurred, with a request for "information concerning the name, nature, and quantity of the deleted data" and informed the Court that they would report back as necessary as this relates to these cases. *Brown*, Dkt. No. 1184.

On September 3, 2026, after Plaintiffs followed up on their request for additional information, Google's counsel wrote that "Google is not required to provide additional information about the tables" because "Google was never required to produce the preserved mapping tables or

provide details regarding their contents, only to preserve them in case they might be 'needed to work with any of the data at issue that has been preserved'" and also declined to provide details about any impact in these cases on the basis that "discovery remains stayed." Sept. 3, 2026 email from W. Somvichian to J. Lee et al.

Given Google's unwillingness to provide any further information regarding the data that was deleted, Plaintiffs cannot yet assess the impact for these cases. As a practical matter, these are issues that the parties should address with Magistrate Judge van Keulen. Magistrate Judge van Keulen oversaw the Special Master process as well as the sanctions briefing, hearings, and orders related to Google's misconduct in *Brown*, and is well suited to address these issues.

Google's Position:

On August 21, 2026, Google notified Plaintiffs' counsel and Magistrate Judge van Keulen of an issue that led to the loss of a portion of six mapping tables that had been preserved pursuant to Magistrate Judge van Keulen's May 20, 2022, July 15, 2022, August 5, 2022, and March 20, 2023 Orders in *Brown*. *Brown* Dkt. No. 1183. As clarified in the notice, multiple years' worth of data from these tables remain preserved. Following this notice, and in response to the *Brown* Plaintiffs' inquiries, Google provided additional details on the affected tables, including confirming that they are among a specific group identified in Srilakshmi Pothana's October 25, 2022 declaration in *Brown*. *Brown* Dkt. No. 781-10.

Google provided notice out of an abundance of caution. To be clear, neither party used this data during the Special Master process in *Brown* and Google is not aware of any reason why the remaining data in the affected mapping tables would be more relevant in the present action. Until detailed bellwether discovery is underway, Google submits that this dispute is not ripe for discussion. And, in any event, the parties agree that any future dispute should be submitted to Magistrate Judge van Keulen in the first instance. Google continues to preserve materials consistent with its preservation obligations in the *Brown* matter, including Docket Entry No. 1188, for potential use in this matter.

**(h) Update Regarding State Court Proceedings**

With respect to the cases remanded to state court, Google's demurrer and motion to strike the complaints filed by the BSF/MM-represented Plaintiffs are now pending. Those motions are scheduled for a hearing on October 15, 2026, before Judge McGowen. Discovery remains stayed in those cases, and the Superior Court has not scheduled any bellwether trials or set any schedule beyond the initial motions.

DATED: September 28, 2026

By: */s/ Aarti Reddy*

Whitty Somvichian (CA Bar No.194463)
wsomvichian@cooley.com
Aarti Reddy (CA Bar No.274889)
areddy@cooley.com
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Heidi L. Keefe (CA Bar No.178960)
hkeefe@cooley.com
Ashley Corkery (CA Bar No. 301380)
acorkery@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone: +1 650 843 5000
Facsimile: +1 650 849 7400

Mazda Antia (CA Bar No. 214963)
mantia@cooley.com
Allison W. O'Neill (CA Bar No. 345926)
aoneill@cooley.com
Reem Gerais (CA Bar No. 360695)
rgerais@cooley.com
COOLEY LLP
San Diego, California 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

Sara Victoria M. Pitt (CA Bar No. 317611)
sporter@cooley.com
KELTON N. SAHAGIAN (CA Bar No. 340366)
kbasirico@cooley.com
COOLEY LLP
350 South Grand Avenue, Suite 3200

DATED: September 28, 2026

By: */s/ Mark Mao*

Mark C. Mao (CA Bar No. 236165)
mmao@bsfllp.com
Beko Reblitz-Richardson (CA Bar No. 238027)
brichardson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293 6858
Facsimile: (415) 999 9695

David Boies (*pro hac vice* forthcoming)
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200

James W. Lee (*pro hac vice* forthcoming)
jlee@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33130
Telephone: (305) 539-8400
Facsimile: (305) 539-1304

Alison L. Anderson, CA Bar No. 275334
alanderson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel: (213) 629-9040

John A. Yanchunis (*pro hac vice* forthcoming)

Los Angeles, California 90071-3474
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

*Attorneys for Defendant Google LLC*

jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice* forthcoming)
rmcgee@forthepeople.com
Kenya J. Reddy (*pro hac vice* forthcoming)
kreddy@forthepeople.com
John Wirthlin (*pro hac vice* forthcoming)
john.wirthlin@forthepeople.com
Jayden Mougin (*pro hac vice* forthcoming)
jayden.mougin@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
1390 Market Street, Ste 200,
San Francisco, CA 94102
Telephone: (415) 846-3862
Facsimile: (415) 358-6923

*Attorneys for the Luna Plaintiffs*

**ATTESTATION**

I hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: September 28, 2026

By: */s/ Aarti Reddy*
Aarti Reddy